RAPAPORT LAW FIRM, PLLC
Marc A. Rapaport
One Penn Plaza
250 West 34th Street, Suite 2430
New York, NY 10119
Telephone: (212) 382-1600
mrapaport@rapaportlaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ZENON DE LA ROSA, individually, and on
behalf of all others similarly situated,

|  |  |
|---|---|
| Plaintiff, | **CLASS ACTION**<br>**COMPLAINT** |
| vs. |  |

CHESTNUT HOLDINGS OF NEW YORK INC.,
1288 LLC, JONATHAN WIENER, and all related
entities.

Defendants.
-------------------------------------------------------------X

Representative Plaintiff ZENON DE LA ROSA ("De la Rosa" and/or "Plaintiff"),

individually and on behalf of all others similarly situated, as class representative, upon

personal knowledge as to himself and upon information and belief as to other matters, by

his attorneys, RAPAPORT LAW FIRM, PLLC, as and for his Complaint, allege:

## PRELIMINARY STATEMENT

**The Nature of Plaintiff's Claims:**

1.      This action is brought pursuant to the New York Labor Law ("NYLL")

Article 19 § 663, 12 New York Codes, Rules and Regulations ("NYCRR"), Part 141 and

NYLL Article 6 § 190 *et seq.*, the Fair Labor Standards Act ("FLSA"), and 29 U.S.C. §

207, to recover unpaid overtime wages, minimum wages, and other wages owed to Plaintiff

and   similarly   situated   co-workers   –   superintendents,   porters   and   other   building

maintenance workers – who have worked at apartment buildings owned and/or operated by defendants in New York City.

2.      This is a class/collective action, seeking unpaid wages, including minimum wage and unpaid overtime compensation and interest thereon, reimbursement for unlawful deductions, liquidated damages and other penalties, injunctive and other equitable relief and reasonable attorneys' fees and costs, under, *inter alia*, the Fair Labor Standards Act ("FLSA") §§ 6 and 7, 29 U.S.C. §§ 206 and 207.

3.      This action further invokes diversity jurisdiction and the supplemental jurisdiction of this Court to consider claims arising under New York Labor Law ("NYLL") (*e.g.*, New York Wage Payment Act; NY Labor Law §§ 191, 193, and 195; 12 N.Y.C.R.R. Part 141-1.9 and 2.10, and Part 142; and NY Labor Law § 215).

**The Chestnut Enterprise:**

4.      At all relevant times, Defendants were and still are a centrally managed real estate enterprise (hereinafter the "Chestnut Enterprise") that owns, controls, and manages apartment buildings and commercial properties (the "Chestnut Buildings") in the New York Metropolitan Area, and during the relevant time periods, the Chestnut Enterprise has employed more than One Hundred (100) superintendents, porters and handymen.

5.      In 2018 alone, the Chestnut Enterprise added an additional 19 properties to its vast and valuable real estate portfolio.  Two years earlier, in or about 2016, the Chestnut Enterprise acquired a portfolio of 19 apartment buildings for a price tag of $87 million. This vast and valuable real estate enterprise was acquired and built with the labor of maintenance workers (superintendents, porters and handymen) who were denied overtime compensation and other wage-related rights afforded by the FLSA, NYLL, and related regulations.

6.      This Collective and Class Action seeks redress for state and federal wage violations that Defendants, as joint employers, inflicted on Superintendents, Porters and other maintenance personnel who worked at the Chestnut Buildings during the applicable FLSA and NYLL statute of limitations periods.

7.      During the time period relevant to the Plaintiff's and Class Members' causes of action, the Chestnut Enterprise was controlled by individual defendant Jonathan Wiener ("Wiener") who had the status of joint employer of superintendents, porters, handymen and other maintenance personnel work worked at the Chestnut Buildings during the applicable FLSA and NYLL statute of limitations periods.

8.      At all relevant times, the Chestnut Enterprise had a principal place of business at 5676 Riverdale Avenue, Bronx, New York 10471, from which it owned, operated and managed the Chestnut Buildings under the same policies regarding the payment of wages to building maintenance employees.

9.      Title to each of the Chestnut Buildings is nominally vested in a limited liability company (collectively, the "Title-Holding Entities"), each of which is wholly owned and controlled by the Chestnut Enterprise, and each having Wiener and/or Wiener's agent as a principal and/or authorized signatory.

10.     The Chestnut Enterprise has applied common employment practices, policies and procedures to Superintendents and maintenance workers of the Buildings, including, *inter alia*, the Chestnut Enterprise's practice of willfully refusing to compensate these employees for all hours worked beyond the first forty (40) hours of work per work week.

11.     The Chestnut Enterprise carried out its common employment practices, policies and procedures by, inter alia, issuing directives that were communicated by the

Chestnut Enterprise's Property Managers, each of whom was responsible for overseeing various buildings and superintendents.

12.     Building superintendents were required to remain on call at their respective buildings from early morning through late at night, where they performed snow removal, providing building access to emergency responders, addressed leaks, handled tenant requests, and performed other tasks.  Regardless of the time of day or night and/or day of the week when such work was needed, superintendents were paid fixed weekly and/or monthly sums, and they were not paid overtime compensation despite working substantially more than 40 hours per workweek in violation of the FLSA.

13.     Furthermore, the Chestnut Enterprise had a policy and practice of requiring unlawful deductions from wages, including the Chestnut Enterprise's requirement that Superintendents, Porters and Handymen pay for tools used solely for the benefit of the Defendants, in violation of Section 141-1.9 of the Rules promulgated by the New York State Department of Labor for the building service industry.  12 N.Y.C.R.R. § 141-1.9.

<u>**JURISDICTION AND VENUE**</u>

14.     Subject matter jurisdiction exists pursuant to 28 U.S.C. §§ 1331 and 1137 because this case arises under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*.  The Court has supplemental jurisdiction over the New York State law claims pursuant to 28 U.S.C. §1367.

15.     Venue is appropriate in this district pursuant to 28 U.S.C. §1391 because Defendants transact business and have agents in the Southern District and this is the judicial district in which the events giving rise to the claims occurred.  Defendants have facilities and employed Plaintiff and Class Members in this district.

16.     This Court has personal jurisdiction over the Defendants pursuant to New York Civil Practice Law and Rules § 301 in that, *inter alia*, Defendants reside and/or

transact business within this State, employed Plaintiff within the State of New York, and otherwise engaged in conduct that allows for the exercise of jurisdiction as permitted by the Constitution of the United States and the laws of the State of New York, and accordingly may be served with process pursuant to Fed. R. Civ. P. 4(h)(1).

## THE PARTIES

**Plaintiff**

17.     De la Rosa is an adult, natural person who resides in the City, County and State of New York.

18.     Beginning in or about September 2014 until on October 3, 2016, De la Rosa worked for Defendants as a Superintendent/Maintenance Worker in New York County at 1288 and 1292 Washington Avenue, Bronx, New York.

19.     De la Rosa was required, as a condition of his employment, to remain on-call, and his workweek would typically exceed 80 hours.

20.      De la Rosa was repeatedly and pervasively paid substandard wages insofar as he was: (a) denied full pay for all hours worked; (b) denied overtime compensation despite working substantially more than 40 hours per workweek; (c) subjected to unlawful wage deductions, including being required to pay for work-related expenses out of his own wages without reimbursement.

21.     De la Rosa's work schedule was particularly abusive and onerous because he was responsible for two buildings with a total of 59 apartments that were in deplorable condition, and during most of the period of his employment, Defendants did not provide De la Rosa with a porter to assist him with his work.

**Individual Defendant (Jonathan Wiener)**

22.     Wiener is an adult, natural person who, upon information and belief, resides in Westchester County, New York.

23.     Upon information and belief, Wiener maintains a principal place of business at 5676 Riverdale Avenue, Bronx, New York 10471.

24.     Upon information and belief, at all relevant times, Wiener was (and he continues to be) the most senior executive in the entities that comprise Chestnut Enterprise and through which the Chestnut Enterprise invests in, owns and controls the Chestnut Buildings.

25.     During the time periods relevant to this Complaint, Wiener was managing member or senior executive of the entities that nominally hold title to the Chestnut Buildings.

26.     Upon information and belief, Wiener is liable for the wages of Plaintiff and those similarly situated under New York Business Corporation Law § 630 and New York Limited Liability Company Law § 609(c).

27.     Upon information and belief, Wiener has managerial and operational control over the Chestnut Enterprise's financial affairs and personnel policies, including, but not limited to, matters and policies pertaining to compensation of the Chestnut Enterprise's employees and overtime policies.

28.     Wiener monitored and directed De la Rosa's work performance by, *inter alia*, regularly overseeing monthly meetings of superintendents that were held at Defendants' offices in Riverdale.

29.     At the foregoing monthly meetings, Wiener would communicate various instructions to superintendents through Spanish-speaking supervisors. On multiple occasions during these meetings and in other contexts, De la Rosa was instructed on the importance of being available 24 hours per day, 7 days per week, to handle emergent issues.

30.     At  the  monthly  superintendents'  meetings,     De  la  Rosa  and  other superintendents received instructions regarding how to perform their work.

**The  Defendant  Entities  that  are  under  the  Common  Control  of  the  Chestnut Enterprise**

31.     At all times hereinafter mentioned, Chestnut Holdings of New York Inc. ("Chestnut Holdings NY") was and is a domestic corporation doing business in New York State.

32.     At all times hereinafter mentioned, 1288 LLC was and is a limited liability company organized and existing pursuant to the laws of the State of New York, and upon information and belief, it was established and controlled by the Chestnut Enterprise for the purpose of nominally holding title to buildings situated at 1288 and 1292 Washington Avenue, Bronx, New York.

33.     Wiener, Chestnut Holdings NY, 1288 LLC, as well as all other entities holding title to the Chestnut Buildings, all operated as a centrally-managed real estate enterprise,  under  common  direction  and  control.    With  respect  to  personnel  and employment policies, the Chestnut Enterprise would carry out its practices and policies through its managerial personnel, including property managers, each of whom exercised direct  oversight  over  the  Chestnut  Enterprise's  superintendents,  porters  and  other maintenance personnel worked at Chestnut Buildings.

## CLASS ACTION ALLEGATIONS

34.     De la Rosa brings this action individually and as a class action on behalf of all persons similarly situated and proximately damaged by Defendants' conduct, including, but not necessarily limited to, the following Plaintiff Classes:

*FLSA Class:*

35.     The FLSA Class refers to all persons who are, or have been, employed as superintendents and maintenance workers at the Chestnut Buildings (the "FLSA Collective

Plaintiffs") from three (3) years prior to this action's filing through the date of the final disposition who elect to opt-in to this action.

36.     This action claims that Defendants violated the wage and hour provisions of FLSA by depriving Plaintiff, as well as others similarly situated to named Plaintiff, of their lawful wages.  Upon information and belief, there are many similarly situated current and former superintendents and maintenance workers of Defendants who have been underpaid in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join this lawsuit.

37.     At all relevant times, Defendants are aware and have been aware of the requirements to pay De la Rosa and FLSA Collective Plaintiffs at an amount equal to the rate of one and one-half times their regular rates of pay for all hours worked each workweek above forty, yet they purposely and willfully chose not to do so.

38.     Defendants failed to pay De la Rosa and the FLSA Collective Plaintiffs for hours worked per workweek above forty in violation of the FLSA.

39.     The FLSA Collective Plaintiffs are readily ascertainable, such information being in the possession and control of Defendants.

40.     Plaintiff and all similarly situated employees who elect to participate in this action seek unpaid compensation, unpaid overtime, an equal amount of liquidated damages and/or prejudgment interest, attorneys' fees, and costs pursuant to 29 U.S.C. § 216(b).

*The New York Class – Rule 23 Class Allegations:*

41.     The New York Class refers to all persons who are, or have been, employed as Superintendents and maintenance workers at the Chestnut Buildings on or after the date that is six years before the filing of the Complaint in this case and the date of final judgment in this matter as defined herein.

42.     The Rule 23 Class Members ("New York Class") are readily ascertainable. The number and identity of the Rule 23 Class Members are determinable from the records of Defendants.  The positions held, and nature and extent of certain unlawful deductions from wages are also determinable from Defendants' records.  For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants.  Notice can be provided by means permissible under Fed. R. Civ. P. 23.

43.     The Defendants, their officers, and directors are excluded from the Classes, as well as all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

44.     This action has been brought and may properly be maintained as a class/collective action under Fed.R.Civ.P. Rule 23 and 29 U.S.C. §216 because there is a well-defined community of interest in the litigation and the proposed Classes are easily ascertainable.

(a) Numerosity: A class action is the only available method for the fair and efficient adjudication of this controversy. The members of the classes are so numerous that joinder of all members is impractical, if not impossible.  Membership in the Plaintiff Classes will be determined upon analysis of employee and payroll records, among other records maintained by Defendants.

(b) Commonality: The Representative Plaintiff and the Class Members share a community of interests in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, thereby making a class action superior to other available methods for the fair and efficient adjudication of the controversy.  Consequently, class certification is proper under Fed.R.Civ.P. Rule 23(b)(3) and 29 U.S.C. §216(b).   For example, the Chestnut Enterprise's practice and policy of failing to

comply with New York Labor Law requirements pertaining to wage notices and pay statements, as alleged above, applies to all members of the New York Class, and the relief demanded (including, *inter alia*, the demand for injunctive and declaratory relief) affects the entire class.   Similarly, the Chestnut Enterprise's policy and practice of unlawful deductions is applicable class-wide and involves common legal and factual issues.

(c) <u>Typicality</u>: The Representative Plaintiff's claims are typical of the claims of the Plaintiff Classes.   The Representative Plaintiff and all members of the Plaintiff Classes sustained injuries and damages arising out of and caused by Defendants' common course of conduct in violation of state and federal law, as alleged herein. All of the Rule 23 Class Members were subject to the same corporate practices of Defendants of failing to pay minimum wage and overtime compensation; unlawful wage deductions; violations of NYLL §195(3) by failing to issue wage statements to employees in the primary language of employees that correctly identified the name of the employer, address of employer, rates of pay or basis thereof, regular hourly rate, number of overtime hours worked; and violations of NYLL §195(1) by failing to provide to employees, upon hiring, a written notice in English and the employee's primary language setting forth the employee's rates of pay and basis thereof, the name of the employer, physical address of the employer's business, names used by the employer, and other legally-mandated disclosures.

(d) <u>Superiority of Class Action</u>: Since the damages suffered by individual Class Members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member makes, or may make it, impractical for Class Members to seek redress individually for the wrongful conduct alleged herein.   Should separate actions be brought or be required to be brought by each

individual Class Member, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants. The prosecution of separate actions would create a risk of inconsistent rulings, which might be dispositive of the interests of other Class Members who are not parties to the adjudications and/or may substantially impede their ability to adequately protect their interests. This risk is particularly applicable here, in light of the demand herein for declaratory and injunctive relief relating to NYLL § 195(1) and (3). Moreover, the Representative Plaintiff is informed and believes, and based thereon allege, that Defendants, have acted and refused to act on grounds generally applicable to all claims, thereby making appropriate injunctive and monetary relief for all members of each class. Consequently, Class certification is proper under Fed.R.Civ.P. Rule 23(b)(2) and 29 U.S.C. § 216(b).

(e) <u>Adequacy of Representation</u>: The Representative Plaintiff in this class action is an adequate representative of the Plaintiff Classes, in that the Representative Plaintiff's claims are typical of those of the Plaintiff Classes and the Representative Plaintiff has the same interests in the litigation of this case as the Class Members. The Representative Plaintiff is committed to vigorous prosecution of this case, and have retained competent counsel, experienced in employment litigation of this nature, who have demonstrated diligence in investigating the facts relevant to the claims of the Representative Plaintiff and putative Class Members. The Representative Plaintiff is not subject to any individual defenses unique from those conceivably applicable to the Class as a whole.

45. Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct retaliation or indirect retaliation. Former employees are

fearful of bringing claims because doing so can harm their employment, future employment and future efforts to secure employment.  Class actions provide Rule 23 Class Members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while reducing these risks.

## COMMON FACTUAL ALLEGATIONS

46.     As described herein, Defendants have, for years, knowingly failed to adequately compensate those employees within the class definitions identified above for wages, including overtime wages due, under the FLSA (29 U.S.C. §§ 206 and 207) and NYLL (Article 19), and unlawfully deducted sums from wages in violation of the New York Wage Payment Act, Labor Law § 190, et seq., the New York Labor Law § 650, et seq., and New York Department of Labor Regulations, 12 N.Y.C.R.R. Part 142.  Among other means, Defendants engaged in unlawful business practices by requiring employees to work numerous hours of overtime on a daily and/or weekly basis without overtime compensation.  In addition, Defendants took unlawful deductions from De la Rosa's wages, by requiring him to pay the cost of tools and supplies.

47.     Upon information and belief, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

48.     At all relevant times, Defendants employed and/or continue to employ De la Rosa and each of the FLSA Class members within the meaning of the FLSA.

49.     At all relevant times, Defendants employed and/or continue to employ De la Rosa and each of the New York Class members within the meaning of the NYLL, §§ 2 and 651.

50.     Defendants employ employees at their places of business in the activities of an enterprise engaged in commerce, including employees handling, selling or otherwise

working on goods or materials that have been moved or produced for commerce.  The enterprise has an annual gross volume of sales made or business done in an amount not less than $500,000.  Therefore, the employees are employed in an enterprise engaged in commerce within the meaning of section (3)(s)(1)(A) of the FLSA.

51.    At all relevant times, the Chestnut Enterprise, and its constituent entities, were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA, operating a group of more than fifty-eight (58) apartment buildings that are nominally titled in different corporate names but which are centrally owned and controlled by Defendants.

### Defendants Constitute Joint Employers

52.    Defendants, collectively as the Chestnut Enterprise, had the power to hire and fire Representative Plaintiff and putative Class Members, supervised and controlled Representative Plaintiff's and putative Class Members' work schedules and conditions of employment, determined the rate and method of paying Representative Plaintiff and putative Class Members and maintained Representative Plaintiff's and putative Class Members' employment records.

53.    The Representative Plaintiff is informed and believes that at all relevant times, the constituent individuals and entities of Chestnut Enterprise functioned as a unified enterprise, namely:

(a) Ultimate control of Chestnut Buildings is exercised by Wiener;

(b) Though the Chestnut Buildings are titled in different corporate names, Wiener has substantial ownership interests in the entities that nominally hold title to the Chestnut Buildings;

(c) Buildings of the Chestnut Enterprise are centrally managed;

(d) The Chestnut Enterprise has publicized its status as a family-operated real estate business that focuses primarily on multiple family apartment buildings; and

(e) The Chestnut Enterprise issues uniform personnel policies and directives to its maintenance personnel, either through its field managers or other managerial personnel.

54.     Through their integrated ownership and management structure, all of the Defendants have an economic interest in the Buildings.

55.     Defendants each had either functional and/or formal control over terms and conditions of work and over the policies and practices with respect to the employment and compensation of the Plaintiff.

56.     Defendants employ or employed Plaintiff, and are or were Plaintiff's employers within the meaning of 29 U.S.C. 201 et seq. and the NYLL.

57.     Upon information and belief, the Corporate Defendants are either alter egos of each other, and/or the Corporate Defendants failed to operate as entities legally separate and apart from themselves by, among other things:

(a) Failing to adhere to the corporate formalities necessary to operate Corporate Defendants as corporations;

(b) Defectively forming or maintaining corporations by, among other things, failing to hold annual meetings or maintaining appropriate corporate records;

(c) Operating Corporate Defendants for their own benefit and maintaining control over these corporations as close corporations, all as part of the same residential real estate enterprise that ultimately benefitted the Wiener family.

(d) Intermingling assets and debts of their own with Corporate Defendants and diminishing and/or transferring assets to avoid full liability as necessary to protect their own interests; and

(e) Other actions evidencing a failure to adhere to the corporate form.

58.     Upon information and belief, Defendants run the business of all of the Chestnut Enterprise as one operation, and Defendants' operations were interrelated and united.

59.     Consistent with their policies and patterns or practices, Defendants harmed Plaintiff individually, as set forth below.

*Defendants' Wage and Hour Violations*

60.     De la Rosa's responsibilities as Superintendent at two separate buildings were particularly challenging because the two buildings where he worked (1288 and 1292 Washington Avenue, Bronx) had been long neglected and were plagued with constant problems, including pipes throughout the buildings that leaked (including leaks into common areas); hordes of rats whose size, tenacity and number are too shocking to fully describe; mechanical and structural elements that were, quite literally, falling apart, including, *inter alia*, collapsing ceilings.

61.     De la Rosa also handled:  maintaining the buildings' appearance, cleaning, mopping, constant repairs to egregiously decaying building systems, plastering, accepting oil deliveries, communicating with tenants, delivering rent invoices to tenants; collecting rent from delinquent tenants, sweeping the sidewalk, recycling, garbage, showing vacant apartments, cleaning and removing discarded items from newly-vacated apartments, installing kitchen appliances including stoves and refrigerators, maintaining bathroom and kitchen faucets, fitting locks, patching drywall, painting ceilings, grouting, plugging mice holes, unclogging toilets, installing doorbells, electrical work, carpentry, and shoveling snow.  During most of his employment, De la Rosa did all of the foregoing with no porter/assistant to help him.

62.     De la Rosa was required to be on call, 24 hours per day, seven days a week, including on holidays, to address emergent issues.  The Defendants and the tenants would contact De la Rosa by his cellular telephone.

63.     Throughout his employment, De la Rosa worked 80 hours per week. During periods of severe winter weather, his workweek would be substantially more than this.

64.     On a typical weekday, De la Rosa began his workday at 6:00 a.m., when he would clean the sidewalk and common areas. Typically (*i.e.*, on a day without

emergencies), De la Rosa worked until 6:00 p.m., without any defined, uninterrupted scheduled period for lunch.

65.     On Saturdays, De la Rosa performed cleaning work from approximately 6:00 a.m. to 10:00 a.m., assuming that there was no emergency that required further hours. On Sundays, De la Rosa prepared the garbage for Monday morning pick-up, which involved at least four hours of work every Sunday.

66.     But the foregoing only involved regular duties.  In a typical week, repairs and unplanned circumstances (such as leaks; electrical failures; emergency responders requiring access; tenant requests) involved at least 12 or more hours of additional work above and beyond De la Rosa's regular hours described above.

67.     Because the buildings at 1288 and 1292 Washington Avenue had been severely neglected, De la Rosa would, on occasion, work around-the-clock to address particularly emergent circumstances, for which he received no overtime pay.  Solely by way of example, on or about August 9, 2016, De la Rosa was notified at 2:00 a.m. that a leak that extended over three floors of 1292 Washington Avenue had led to a ceiling collapse at an apartment on the building's second floor.  De la Rosa worked, without break, over the entire night to fix the apartment.  As a result, it is conservatively estimated that De la Rosa worked approximately 80 hours during the workweek ending August 12, 2016. But for the foregoing work week, De la Rosa received no overtime pay.  Based on his regular rate of pay ($500/week), De la Rosa effective hourly rate for the week ending August 12, 2016 was $5.55.

68.     De la Rosa was required, as a condition of his employment, to pay, from his personal funds, for his tools, which included, among others, a welding machine, electrical saw, heavy snake, electrical tester, and other items.

69. Defendants did not instruct De la Rosa to record the number of hours that he worked each week. Instead, they compensated with flat sum ($500 per week), which covered only the first forty hours of work per week, with no payment whatsoever for overtime hours.

70. Defendants failed to provide De la Rosa with proper wage statements that accurately reflected the amount of hours that he worked each week.

71. The flat sums that Defendants paid to De la Rosa were intended to cover only the first forty hours worked per week.

72. Defendants designated De la Rosa and other Superintendents as hourly employees who were entitled to (but never actually paid) overtime compensation. Upon information and belief, through this fiction, Defendants willfully tried to evade overtime and minimum wage laws by creating the illusion of compliance, even though, in practice, Superintendents received fixed sums.

73. De la Rosa was never instructed to report the number of hours that he worked on any given day and/or in any given pay period. He was never given any mechanism for reporting his hours.

74. Defendants violated their obligation under the FLSA to make and preserve a record of the hours worked by De la Rosa – an unlawful practice and procedure that, upon information and belief, was applied to all Superintendents and Porters.

## AS AND FOR A FIRST CAUSE OF ACTION
### FLSA Overtime Wage Violations, 29 U.S.C. §§ 201 *et seq.*
### (FLSA Class)

75. De la Rosa incorporates each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

76. At all relevant times hereto, the Defendants have been employers engaged in commerce, as defined under 29 U.S.C. § 203(b) and (d). Defendants employed members of

the FLSA Class as Superintendents, employment positions which engaged the employees in commerce, as defined under 29 U.S.C. §§ 203(b), (e), (g) and 29 U.S.C. § 207(a)(1).  At all times relevant hereto, Defendants have been an "enterprise engaged in commerce or in the production of goods for commerce," as defined under 29 U.S.C. § 203(s)(1).

77.     De la Rosa is informed and believes, and thereon alleges, that Defendants have required, or require, the FLSA Class Members as part of their employment to work without additional compensation, such as overtime, in excess of the forty hours per week maximum under 29 U.S.C. § 207(a)(1).  That Section provides the following:

> Except as otherwise provided in this section, no employer shall employ any of his employees...for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate which is not less than one and one-half times the regular rate at which he is employed.

78.     Indeed, in the performance of their duties for Defendants, members of the FLSA Class routinely worked over substantially more than forty (40) hours per week, yet did not receive overtime compensation for the work, labor and services they provided to Defendants, as required by the FLSA, 29 U.S.C. §§ 206 and 207.  The precise number of unpaid overtime hours will be proven at trial.

79.     De la Rosa proposes to undertake appropriate proceedings to have such FLSA Class Members aggrieved by Defendants' unlawful conduct notified of the pendency of this action and join this action as Plaintiffs, pursuant to 29 U.S.C. § 216(b), by filing written consents to joinder with the Court.

80.     Defendants' violations of the FLSA were willful violations of the FLSA, within the meaning of 29 U.S.C. § 255(a).

81.     As a result of the foregoing, De la Rosa seeks judgment against Defendants on his own behalf, and on behalf of those FLSA Class Members similarly situated who file written consents to joinder in this action, for all unpaid wages, including minimum

wage and overtime wages owed by Defendants to De la Rosa and the FLSA Class, pursuant to 29 U.S.C. §§ 206 and 207, together with an award of an additional equal amount as liquidated damages, and costs, interest, and reasonable attorneys' fees, as provided for under 29 U.S.C. § 216(b).

**AS AND FOR A SECOND CAUSE OF ACTION**
**Illegal Deductions, New York Labor Law, Article 19 § 193**
**12 N.Y.C.R.R. § 2.10(a).**
**(New York Class)**

82.     De la Rosa incorporates each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

83.     In violation of the New York Labor Law, Article 19, § 193, Defendants unlawfully deducted wages from De la Rosa, including, *inter alia*, deductions by requiring Superintendents to spend their own money on work-related expenses, which further reduced wages below the required minimum wage, including but not limited to, tools of the trade to complete mandated work.

84.     As a result of the foregoing, De la Rosa seeks judgment against Defendants on his own behalf, and on behalf of New York Class Members similarly situated for reimbursement of unlawful deductions, as well as liquidated damages, and interest, and such other legal and equitable relief from Defendants' unlawful and willful conduct as the Court deems just and proper.

**AS AND FOR A THIRD CAUSE OF ACTION**
**Declaratory Judgment**
**(FLSA Class and New York Class)**

85.     Plaintiff, for himself and on behalf of the FLSA Class and New York Class, repeat, re-allege and incorporate by reference the prior allegations of this complaint as if fully alleged herein.

86.     This action provides a ripe and justiciable case or controversy.

87.     It is just and equitable that the Court declares the rights and other legal relationships of the parties.

88.     De la Rosa, the FLSA Class and New York Class are entitled a declaration that Defendants acts are in violation of the FLSA and NYLL.

## AS AND FOR A FOURTH CAUSE OF ACTION
### NYLL Wage Theft Prevention Act – Failure to Provide Wage Statements
### (New York Class)

89.     De la Rosa, on behalf of himself and the New York Class members, repeats and re-alleges and incorporates each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

90.     The NYLL and Wage Theft Prevention Act ("WTPA") require employers to provide employees with an accurate wage statement each time they are paid.

91.     Throughout De la Rosa's employment with Defendants, Defendants willfully failed to provide De la Rosa and the New York Class with wage statements at the end of every pay period that correctly identified the name of the employer; address of employer; rates of pay or basis thereof; regular hourly rate; whether paid by the hour, shift, day, week, salary, piece, commission, or other; number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; and such other information as required by NYLL § 195(3).

92.     Due to Defendants' violations of the NYLL, Plaintiff and the New York Class are entitled to recover from Defendants per employee liquidated damages of $250.00 per work day that the violations occurred, or continue to occur, up to $5,000.00, together with costs, reasonable attorneys' fees, pre-judgment and post-judgment interest, and injunctive and declaratory relief, pursuant to the NYLL § 198(1-d).

**AS AND FOR A FIFTH CAUSE OF ACTION**
**NYLL Wage Theft Prevention Act – Failure to Provide Wage Notices**
**(New York Class)**

93.     De la Rosa, for himself and on behalf of the FLSA Class and New York Class, repeats, re-alleges and incorporates by reference the prior allegations of this complaint as if fully alleged herein.

94.     The NYLL and WTPA, as well as the NYLL's interpretative regulations, such as but not limited to 12 N.Y.C.R.R. Part 141, require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

95.     From its enactment on April 9, 2011, the Wage Theft Prevention Act also required employers to provide an annual written notice of wages to be distributed on or before February 1 of each year of employment (later amended to be distributed "upon hiring" and not annually) and to provide to employees, a written notice setting forth the employee's rates of pay and basis thereof; the name of the employer; physical address of the employer's business; names used by the employer; and other legally-mandated disclosures.

96.     In violation of NYLL § 191, Defendants failed to furnish Plaintiff, at the time of hiring (and annually for those years prior to the amendment) or whenever there was a change to their rate of pay, with wage notices containing the rate or rates of pay and basis thereof; whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of

business, and a mailing address if different; the telephone number of the employer; and anything otherwise required by law; in violation of the NYLL § 195(1).

97.     Due to Defendants' violation of NYLL § 195(1), De la Rosa and New York Class Members are entitled to recover from Defendants liquidated damages: (a) for the time period commencing six years before the filing of this Complaint, through February 27, 2015, the sum $50 per work week, up to $2,500; and (b) from February 27, 2015 through the resolution of this case, $50.00 per work day, up to $5,000.00, together with reasonable attorneys' fees, and costs of disbursements of the action, pursuant to the NYLL § 198(1-b).

### AS AND FOR A SIXTH CAUSE OF ACTION
### New York Labor Law – Overtime Wages
### (New York Class)

98.     Plaintiff, for himself and on behalf of the FLSA Class and New York Class, repeats, re-alleges and incorporates by reference the prior allegations of this complaint as if fully alleged herein.

99.     The overtime wage provisions of the NYLL, including Article 19, and its supporting regulations, apply to Defendants and De la Rosa.

100.    Defendants willfully failed to pay De la Rosa for all of the hours that he worked in excess of 40 hours in a workweek.

101.    Defendants willfully failed to pay Plaintiff premium overtime at a rate of time and one-half their regular hourly rate for all hours worked in excess of 40 hours per workweek.

102.    As a result of the long hours that De la Rosa worked per week and the low amount of his fixed pay, the amount of pay fell below New York's minimum hourly wage rate.  By way of example, in August 2016, New York's minimum wage rate was $9.00 per

hour.  In light of De la Rosa's average workweek of approximately 80 hours, his rate of pay ($500 per week) often fell below $6.25 per hour.

103.    Defendants willfully failed to keep, make, preserve, maintain, and furnish accurate records of time worked by De la Rosa.

104.    As a result of Defendants' knowing or intentional failure to pay Plaintiff overtime wages for hours worked in excess of 40 hours per workweek, Plaintiff is entitled to compensation for unpaid overtime, liquidated damages, attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

105.    All members of the New York Class are similarly entitled to compensation for unpaid overtime, liquidated damages, attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

<u>**RELIEF SOUGHT**</u>

**WHEREFORE,** the Plaintiff, Zenon De la Rosa, on behalf of himself and the FLSA Class and the New York Class, respectfully requests that the Court grant the following relief:

1.    Designation of this action as a collective action on behalf of the FLSA Class members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 28 U.S.C. § 216(b) and appointing Plaintiff and his counsel to represent the FLSA Class Members;

2.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the New York Class members and appointing Plaintiff and his counsel to represent the class;

3.    An order tolling the statute of limitations;

4.      That the Court declare, adjudge and decree that Defendants violated the overtime wage provisions of the FLSA as to the Representative Plaintiff, the FLSA Class and the New York Class;

5.      That the Court declare, adjudge and decree that Defendants willfully violated their legal duties to pay minimum wages and overtime compensation as required under the FLSA and NYLL;

6.      That the Court declare, adjudge and decree that the Representative Plaintiff and the FLSA Class Members were at all times relevant hereto, and are, entitled to be paid overtime for work beyond 40 hours in a week remuneration for unlawful deductions; and that the amounts to which Representative Plaintiff, the FLSA Class and the New York Class are entitled is to be doubled as liquidated damages and awarded thereto;

7.      That the Court make an award to the Representative Plaintiff, the FLSA Class and the New York Class of damages and/or restitution for the amount of unpaid compensation, unpaid overtime compensation, including interest thereon, and statutory penalties in an amount to be proven at trial;

8.      That the Court make an award to the Representative Plaintiff and the New York Class of reimbursement for all unlawful deductions;

9.      For all other Orders, findings and determinations identified and sought in this Complaint;

10.     For pre-judgment and post-judgment interest on the amount of any and all economic losses, at the prevailing legal rate, under the NYLL and CPLR;

11.     For reasonable attorneys' fees and expenses of this action, pursuant to 29 U.S.C. § 216(b), New York Labor Law and as otherwise provided by law;

12.     Declaring that Defendants violated the notices and record keeping provisions of NYLL and WTPA;

13.    An award of statutory damages for Defendants' failure to provide accurate wage statements pursuant to NYLL § 198(1-d);

14.    An award of statutory damages for Defendants' failure to provide proper and/or accurate wage notices pursuant to NYLL § 198(1-b);

15.    A permanent injunction requiring Defendants to pay all statutorily required wages pursuant to the FLSA and NYLL; and

16.    Such other relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.


Dated: January 10, 2019                    **RAPAPORT LAW FIRM, PLLC**

By:                  /s/

_____
Marc A. Rapaport, Esq.
Attorneys for Zenon De la Rosa
and the Plaintiff Classes
One Penn Plaza
250 West 34th Street, Suite 2430
New York, NY 10119
Ph: (212) 382-1600